Ms. Williams. Thank you. May it please the court. This is actually a typical, everyday ordinary case that turned into an extraordinary case with two extraordinary issues. And that's why we're recording today. The first issue is jurisdiction. It goes to the heart of the CIT's jurisdiction and it's raised in this case. Typically, when you have a liquidated entry, the importer protests the liquidation. It's heard before, the importer then brings a summons before the court of international trade and the case is heard on its merits. In this case, the entry was liquidated. Days after the entry was liquidated, the importer brought an H action, which the trial court correctly recognized was not proper. But the trial court found that jurisdiction under 1581I was appropriate. That is the very first time any court, whether it's this court or the trial court, has ever permitted an importer to skip protesting an entry, a liquidation. And there's a reason it's the very first time. Because 1514, the governing statute here says you're not allowed to. It says a liquidation is final unless protested. It's in black and white. It's not really open to dispute. Secondly, this court's longstanding practice of precedence in American Air Parcel and in Unaroyal hold exactly the same thing, that you must protest a liquidated entry. In addition, American Air Parcel goes further and it says you can't even get into court in a 1581I case on an entry that isn't even liquidated yet. On an unliquidated entry, you still have to wait until it's liquidated and then you can come to court. Congress set up the system. This court has said the system is in black and white. There's no dispute about it. In our case, the trial court said, well, I know about 1581A. However, I think jurisdiction under 1581I is appropriate here. It is the very first time a court has ever done that. But now, what is the flaw? You're not saying that the court was not remedying, in its view, a serious error, a serious injustice that had been committed. So your view is that that is not to be considered or is secondary or that the court has no authority? I'm not quite following your question. Our position is the importer did not plead nor did the trial court hear this case on a jurisdictional basis, which it can. It heard this case on 1581I, which is inappropriate. You're saying that the court has no flexibility. Is that what you're telling us? Even though, in the court's view, it was correcting an extreme injustice. That is the problem with this case. And it's what much of the discussion at the trial court level is. The government has sympathy for the plaintiff. Everybody has sympathy for the plaintiff. But that doesn't mean you get to win a case. Simply because you may or may not, because we won't even go into whether the plaintiff really had a harm to him. But let's assume, for the sake of argument, that the plaintiff's been injured. Simply because you've been injured does not mean you get relief. You have to jump through the hoops that Congress has set up. And the hoops are there for a very, very important reason. You can't just willy-nilly ignore them because they're inconvenient or they seem like they take a week too long. Because hoops ensure that the correct thing is done. And Congress, which drafted the law, said these are the hoops. They're in black and white. They're not disputable. So even though the plaintiff may or may not have suffered harm, you still must follow the correct hoops in order to get before the court. So the government's view is that there is no way in which, for instance, to avoid the bankruptcy and the other asserted harms, that the court is powerless? Or that this was the wrong court? Or that they should have gone to the district court for remedy? No, the Court of International Trade has exclusive jurisdiction. Congress and this court has said that the potential of bankruptcy is not sufficient to avoid a protest. American Air Parcel deals with that directly. But let's even just for the sake of argument say that there might just, and this is truly for the sake of argument because it really runs against what the black letter laws and what American Air Parcel says, let's just assume for the sake of argument that maybe if a company is going bankrupt tomorrow, somehow you can get AI jurisdiction. Clearly that's not what happened here. Let's assume that the facts as they were found by the Court of International Trade are supported. Yes. Then clearly American Air Parcel deals with that directly. That's not the sufficient type of manifest inadequacy that an importer can show. American Air Parcel and Interoil are on all fours with that principle. Simply stating an affidavit that says we're going to suffer financial harm is not enough to let you get around A. I didn't say that. I said let's assume the facts are supported, not that there was an affidavit, but that in fact they are true. The first part of my sentence was assume, even for the sake of argument, that they actually had proven everything they did not prove. You know, you're raising a very important question of the role of the judiciary with respect to regulations and procedures in the interest of justice and the government's position is that the regulation, the procedure and the bureaucracy cannot be intruded upon by the court in the interest of justice. That is the heart of this case, whether America is a country of the rule of law. And the rule of law, when Congress sets forth a rule and they're explicit and the results are not, you know, sometimes you can look around the black letter law and the results are ridiculous. There's a whole lot of cases and everybody admits that's not a clear rule of law. Why do we have the laws administered by a bunch of bureaucrats rather than judges who are sworn to uphold the Constitution? I'm sorry, I missed the first part of your question. I'm sorry. I'm really trying to explore the government's position when in fact it's clear to a court that there is injustice. And the government's position is never mind. We don't care about injustice. No, the government's position is if Congress, which is the branch of the government, which promulgates the law, it is the executive branch's responsibility to enforce that law. It's the judicial branch's responsibility to interpret any problems that arise from the execution of the law by the executive branch. That is the heart of this case. What the problem is, the trial court said, I think the result that's occurring here is unfair. And I'm going to look beyond what Congress and a binding precedent from a higher court says because I think the result is unfair. And irreversible and injurious. I've suggested that you accept the findings. I will accept for our discussion here they are irreversible and all of that. They're not. But the Congress explicitly, as did this court, say that the delay inherent in getting a protest, which we're talking here at most is 30 days, is acceptable. Congress spoke on that. We have to live with what Congress said. If the importer or somebody disagrees with that, you have to go to Congress because we are a country that's a rule of law. And that's really what the problem is here. It's like, here's an analogy. A high school kid graduates from high school and he doesn't know how to read. So he says there's something wrong with the system. I should be able to get recompense because I don't know how to read. Then you look into it and you realize he didn't go to class. He didn't do his homework. He didn't go to summer school. He refused to tutor. I don't understand your analogy. If the importer won't help themselves, they do the wrong thing, they cannot complain later, they don't have any recovery. That you have to do the right thing to get where you need to be. The importer here refused and did it knowingly because if you look at the transcripts from the lower proceeding, it's crystal that the government, and frankly, the government being me, very open with here's the jurisdiction basis you need, here's the cause of action you need to plead and you will have your case heard on the merits. The importer here said, no, I like what I'm doing. And the trial court said, I have great sympathy for the importer. I'm going to give him relief. I don't care that I have to bend a bunch of laws because this importer needs relief. I don't recall the trial court saying they didn't care about the law. I recall them saying that the law empowered the court to provide such relief. The court didn't say it directly, but it certainly said it indirectly, and these are very strong words that I'm using. Because if you look at the court's analysis of jurisdiction, it puts a whole bunch of arguments that have never appeared in law before or have been directly contradicted by American Air Parsons. The court said, well, if you challenge a statute or a regulation, you can come in under I jurisdiction. That runs directly counter to American Air Parcel and it's directly counter to that. So the trial court didn't use the words I used, but if you actually read what it did, it did not follow the law. It recited the correct case, American Air Parcel, but it did not follow its holding. It actually went completely opposite to it. Could I ask a question about the timing issue so that I'm clear on this? Because the amount of time for a protest has changed by statute and it wasn't entirely clear to me the pertinence of that statute to this case. Could you lay out what the timing would have been as applied here and would be to a case filed today? It depends when the entries are made, if that's really what governs. Based on when the statute 1515 was enacted, some of the entries in this case are governed by it, some are not. Because some entries were made before it, some were made after it, and I completely forgot the date is the critical date here. I'm very sorry. That's okay. I thought that was the answer. Let me ask you a follow up question on that. If some of the entries would be subject to, what is the amount of time that we're talking about here? 30 days. 30 days maximum, right? Yes, that is correct. All right. And if some of the entries would be subject to that, then presumably you could get a determination that would be binding for all of them, I would assume, assuming that the parties are willing to accede to the notion that they're all the same product. Yes, that is correct. That has been the foundation of customs law for 200 years. So effectively you have a 30-day, even if only one of the entries was within the 30-day, you really have a 30-day period that effectively governs all of them? That is absolutely correct. And in this case, we offered to have that 30-day govern everything. And frankly, with some regularity, when cases come up that are expeditious, you know, that have real problems, we work with the importer. And in American Bay Ridge, it was done in 24 hours. You had an entry, liquidation, and protest decided within 24 hours. Now you stated earlier that you had had some informal discussions along the lines of what's the right way to go here and so forth. Were you in a position to make any kind of representation as to any period less than the 30-day period that would be applicable in this case? I work with customs. Customs was involved with this every step of the way. Yes, I was in the position. Yes, I had the authority. And did you make such a representation? Yes, I did. I think it's on the record. Okay, and what was the period? 30 days for everything. The importer never worked with us. That could have been cut down, but it was refused out of hand, so it never went anywhere, so we didn't do the type of American Bay Ridge discussion we typically have. Okay, and then there must be a decision within 90 days thereafter, is that correct? There's a decision on the protest in 30 days, one month. You get a decision. 30 days to file the protest? And get a decision. 30 days thereafter for the decision? No, you file the protest immediately. What does the statute say in terms of the response to when a protest has been filed? Once the protest has been filed, there's 30 days for a decision. The protest can be filed immediately. So you effectively have a decision. Okay, then 30 days to a decision. Then if the decision is adverse, how much time for a decision on the appeal? From an adverse decision on the protest? Then you go to court. Then you go to the Court of International Justice. Okay, and how many days, how long does that take? I cannot tell you. All I can do is I cited in our briefs. But that was a factor discussed by the court, was it not? That is correct. The delay, if the protest was adversely decided, how long it would take before this importer could get a decision? All I can say is there are numerous cases, item company, inner secrets, and they're listed all in our brief. You have decision from the day the court has the case. I mean, excuse me, you have submission to the court from the day the court has the case within three to four weeks. And that is discovery, motions, everything. It can be submitted in weeks. That's typical and very happens a couple of times a year with the Court of International Trade when you have emergencies. Thank you, Ms. Williams. Your time has expired. I'm sorry. Mr. Kreisberg. Please proceed. Thank you. May it please the court, in the seminal New Deal case of NLRB versus Jones and Laughlin Steel, the Supreme Court declared that the cardinal principle of statutory construction is to save and not to destroy. I find that declaration resonant in the case before this court this morning because the essence of this case is whether the statute that Congress enacted to protect importers with advanced rulings is to be saved or destroyed, and with it, my client. And let me turn, if I may, first to the jurisdictional issues. There are three independent grounds for affirming the court's grant exercise, rather, of jurisdiction under 1581I, the first of which is the one that the court itself relied on, and that is the urgency of the situation facing us. The second is prospectivity, and the third is what I would call accountability. As to urgency, the court below, in findings of fact that can be reversed only on clear error, made two key factual determinations. First, that after looking at the record in this case, after having two hearings specifically on jurisdiction, the court concluded that it would take a minimum of five months from the filing of a case under 1581A, this case, to a hearing on the merits. Now, that does not include, as Judge Newman, you were pointing out, the time before the filing where we'd have to file a protest and get it denied, which would be a minimum of 30 days, and, of course, the length of the hearing on the merits and the eventual determination by the court. So the court is saying, by saying five months for the segment from filing to hearing, that it would take a minimum of six, seven, perhaps longer months before my client could get a resolution of the issues before the court. You're talking about five months in the Court of International Trade. That's correct. Now, explain to me why—this case is before Judge Carman. That's correct. Under I, as he ultimately determined. Why would the period for resolution of the merits be different before Judge Carman as an I case than it would be as an A case? That really goes— From the day that it arrives. Yes. There's a very significant difference between a 1581A case and a 1581I case, and it really goes to the issue of prospectivity—that was the second independent ground I was about to mention—and accountability. But let me sort of compress those two in the answer to your question. All right. A 1581A case focuses on past entries. You have to have an entry that's already come into the country under 1581A. And it drives the court into a standard of review under 28 U.S.C. 2640A that calls for the court to render its decision on the record made before the court. By contrast, a section 1581I case takes the court into a jurisdictional provision 2640E, which in turn leads to various standards of review set out in the Administrative Procedure Act under 5 U.S.C. 706. What that means is that, as distinct from a 1581I case where the court focuses on the agency record, the 300 pages plus which are excerpted, some of which in your joint appendix, in a 1581A case, a record has to be made before the court. Now, this is crucially important both to the timing aspect, because you've got then not only briefs on the issues, but you've got evidence that has to be submitted, discovery. You'll see in the excerpts in the transcript that the government said it would take at least 30 days of discovery if it were a 1581A case. Presumably, we would need to take at least as much time to depose the various government officials involved as to what they were doing. And then the court has witnesses, evidentiary record, and so on. It's a totally different adjudication. And that is crucially important to the manifest inadequacies of 1581A, both as to urgency and as to prospectivity, because it was crucial to us not only to deal with the entries listed in the notice of action, but also prospectively to have declaratory relief that our advance ruling continued in full force in fact. And that's what Judge Carman gave us in the declaratory judgment. I suppose there wouldn't be any particular reason, would there not, that if the parties agreed, and the court was amenable to it, that the record before the administrative agency could be stipulated, too, as the record before the court? Your Honor, I would only say that that's a stipulation I would have some doubts that we would be able to achieve. You mean because you think the government would resist it? Yes, and frankly, knowing what I do with the record, the government would very much prefer not to have that be the record on which it was adjudicated. And that's part of the problem. The government talks about, oh, well, we could just stipulate to an immediate denial of a protest and we'd be in in 24 hours. I would suggest to Your Honors that you take a look at the 2005 Hartland decision, not the 2001 one, which dealt with the merits, but the classification. The 2005 dealt with jurisdiction. And the citation is 424F3-1244 at pages 124748 and 1253. That describes to the frustration of both this court and the lower court what happened when, in response to representations made to the Court of International Trade by the government saying, don't worry, dismiss this case, we'll go under 1581A, we'll work it out with the government to do a test case, to do an immediate denial of protest, we'll get in in a moment, that agreement never occurred. And that opinion, I think, delves into some of the happenings that occur to importers when they go off into 1581A territory in response to a suggestion in court that there will be some kind of agreement. But let me go back for just a moment, Your Honor, on this issue of accountability, because it ties in directly with this distinction between 1581A and 1581I. You have here, very importantly, and in contrast to the plaintiff in American Air Parcel and in Unaroyal and the other cases that are so much relied upon by the government, an importer with an advance ruling. That advance ruling means we have certain protections under Section 1625C. Those protections include that we get notice, we have an opportunity for comment, and we have a grace period of 60 days if there's going to be a revocation or modification of that ruling. Now, because Congress enacted this administrative process for the modification or revocation of advance rulings, it's crucial that the government be held accountable based on the record it makes during that notice and comment period. And that can only be achieved, as I suggest, under 1581I. That's the only way to assure that, because if we go into 1581A, there is the risk, and in this instance I would say extremely high risk, knowing what this record suggested, that the government is going to want to come in and say, never mind the record that was established pursuant to 1625C process, we want to make a new record before you, Court of International Trade, which we are entitled to under 1581A. And as this court knows from its decision in the ITT Corp case, there is a distinct difference between the agency record and the record made before the court under 28 U.S.C. 2640A. And so, due to the urgency of the situation— I missed a step there in your explanation, and that may be just my lack of complete familiarity. I don't have the same familiarity that you and Ms. Williams do with the procedures here. But how would that arguable government preference for a record before the CIT affect the 1625C issue? I'm not sure I see how that— The point is, Your Honor, that importers—that if the structure for revocation or modification of advance rulings that Congress enacted to protect importers in our position— I'm familiar with that. is to be tossed aside after a modification or revocation has occurred. And in lieu of the record on which Congress intended the agency to be required, to be held accountable, to rest its determination of a revocation or modification, that record is tossed aside, and instead, the government has the opportunity to put before the court elements and arguments that were never before the agency. Then we basically undermine the integrity of the 1625C. But that's a question of the substantive law of 1625C, isn't it? Rather than the procedure that's employed between A and I. My point basically is that the decision about jurisdiction implicates not only the urgency of the situation and the factual findings that the court made below in support of that determination, both the five months and the fact that in five months we probably wouldn't be around any longer, but also the integrity and accountability of the government for complying with 1625C. Because if it is not held to the record that under 1625C it is supposed to rest its modification or revocation determination and instead has the opportunity to supplement or substitute wholesale that record for a new record made before the court, then what is left of the integrity? Why should they even care what record they've established under 1625C when they have the opportunity to go under 1581A and say we have an opportunity to come up with a completely new record and justify what we just did? That to me and to my client is not consistent with 1625C. And that's the way in which— But if it isn't consistent with 1625C, isn't that something that Judge Carman would say at the outset of the government's effort to make a new record? It would seem to me that's the point at which the 1625C problem gets resolved. Well, I don't see how it gets resolved because it's a statutory statement that the record on which the court renders an adjudication under 2640A is the record made before the court. Well, that may well be, but that doesn't mean that if 1625C requires that something be resolved through the administrative process, that you thereby, because of the record before the court requirement, you thereby get to change that requirement simply because there's a provision that says a record is made before the court. The record may include the question of whether the administrative process has been carried out in the correct way, don't you think? I— You see what I'm struggling with here? I understand, Your Honor, but you have to understand also, I hope, that in the importer's posture, we can't take risks like that. We are out of business from the time that notice of action arrived that morning of April 20, 2005, until we can get resolution of this. And it is essential to us that the agency—that we get that with the urgency required, which is what Judge Carman was focusing on, with the prospectivity that we required, which is an independent ground, why 1581A is inadequate, which the judge didn't reach, and the accountability issue, which, again, the judge didn't address because he didn't have to reach it. He felt he was resting on urgency. If I may, let me turn briefly to the issue of the merits. The government's basic position here is reminiscent of that wonderful scene in The Wizard of Oz, where Dorothy is cautioned, pay no attention to the man behind the curtain. Pay no attention to the man behind the curtain. What the government's basically saying is, never mind the 300 pages of administrative record showing that this determination by the government was made at the highest levels of headquarters. Never mind all the email traffic, the internal memoranda, and other notes that went back and forth while they determined whether and how to avoid the standards under 1625C. Just consider this an ordinary notice of action. Well, that kind of argument wouldn't fool a young girl from Kansas, and I'm sure it didn't fool Judge Carman. It's not going to fool this court. This was not an ordinary notice of action. This was a revocation or modification of an advance ruling simply cloaked in a transmittal letter that took a customs form on it. But the substance, not the form, is what's crucial here in the Erred Due Process. Let me, if I may, touch briefly on the issue of deference. The government doesn't press deference, and there's good reason for that. No deference is due. Chevron deference, not Skidmore deference. With respect to Chevron deference, there is no regulation implementing 1625C that addresses the question of what is a decision in 1625C. If you go to 19 CFR 177.12, which is the regulation that supposedly implements 1625C, you'll see what customs has done is to say if we have an interpretive ruling that modifies or revokes, etc., etc., it writes the word decision completely out of its regulations. So there is no regulation to defer to here. There's also no Skidmore deference because there's no general policy guidance, other statements articulating anything with respect to this interpretation. What the government has done, however, is on an ad hoc basis come in and litigate it repeatedly in an effort to restrict the interpretation of 1625C. In the California Industrial Products case that this court decided just a few months ago, the government was in here arguing that protest review decisions were not included in the word decision in 1625C. Now they come before the court and argue that protest review decisions are the only decisions under 1625C. Now that's precisely the kind of litigation posturing that this court in Skinner and the Supreme Court in other cases that we cite has said is deserving absolutely no deference. That's what we have here. The court can decide, as the court below did, that this was a decision plain and simple. It can decide that it was an interpretive decision, which under 19 CFR 177.10 is defined to include an internal advice memorandum, which this memorandum of March 10, which underlies the notice of action, clearly was. It was a response directly, as it says in its first paragraph in the joint appendix, is a response to a court inquiry to headquarters about the classification of these products. Or the court may determine it's an interpretive ruling, because the term ruling is actually what Customs itself and the administrative record describes. This action is. Mr. Kreisberg, we need to wrap it up. Your time is expiring. Your Honor, I would only in closing suggest that the combination of the manifest inadequacy of 15A1A and the manifest incompatibility of the Customs' actions with respect to 1625C should lead this court to affirm the judgment of the court below and say, rather than destroy my client. I thank you. Thank you. And it seems we've exhausted your rebuttal time, but you can have a moment for the last word. I appreciate that. Thank you very much for giving me the time. Just a couple of points I'd like to address. With regard to prospective relief, the trial court said the complaint. The complaint didn't seek it, so it couldn't give it. So that's not a factor that is appropriate to look at here. There was a discussion of how long it would take to try an A case. It depends on what the cause of action the plaintiff pleads. If the plaintiff pleads 1625, then you're literally at an administrative record very similar to what we have here, because whether it was revoked or not goes back to the administrative record. If the plaintiff comes in under an A case and says, I want to try the correct classification of my goods, then that is a factual case, which is an inner secret, can be done in a couple of weeks, because this isn't that complicated a case. Is it butter? Is it sauce preparation? That type of factual case can be done very quickly. The counsel said that the government was trying to avoid the administrative record. That is a gross misstatement. The administrative record, when put into chronological order, which I apologize for it not being in due to the press of time at the trial court level, we didn't frankly have time to do it. When put into the correct order, as my reply brief shows, it's rather clear what happened. The court asked headquarters through the NIS, who was sort of the specialist, should this ruling be revoked. OR&R, the department that put out that ruling, said no, it is a correct ruling. It governs the goods it describes. If something comes in that's not described by that ruling, it doesn't govern. So the court made the decision this does not govern. These are different goods than covered by the ruling. That's all that happened at the administrative level. The notice of action very clearly is simply the court's indication that the duties have to be upped in this case because that ruling does not govern. Now we need to wrap it up. I know your time is exhausted. Thank you very much. The case is taken under submission.